**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| ANTOINE SHAW and CHERYL SHAW, on behalf of W.S. (dob 7/16/2004), Minor Child,<br><br>        Plaintiffs,<br><br>   v.<br><br>DOLTON RIVERDALE SCHOOL DISTRICT 148,<br><br>        Defendant(s). | No.  19 C 1241<br><br>Judge Rebecca R. Pallmeyer |

# MEMORANDUM OPINION AND ORDER

W.S. is a fifteen-year-old child who, until 2017, was a student in a school within Defendant Dolton Riverdale School District 148. During the 2016–2017 school year, then a seventh-grader at Roosevelt Junior High School, W.S. received special education services for an emotional disability and a learning disability. In September 2016, W.S.'s parents, dissatisfied with their child's classification, filed a due process complaint with the Illinois State Board of Education ("ISBE"); the complaint was withdrawn after the parents and the District entered into a mediation agreement on May 9, 2017. Among other conditions, that agreement required the District to place W.S. in a private therapeutic day school and change W.S.'s eligibility classification from emotional disability to autism. The parents allege that the District breached that agreement soon after it was made, so they filed a new complaint with an impartial hearing officer ("IHO") appointed by the ISBE. The IHO dismissed their complaint and this appeal followed, in which Plaintiff parents challenged the IHO's decision as a violation of federal law and also assert state law claims for breach of the mediation agreement. They filed their complaint in state court, but Defendant removed the case to this court and has now moved to dismiss. As explained below, that motion is granted in part; the federal claims are dismissed, and Plaintiffs' state law claims are returned to the Circuit Court of Cook County.

**BACKGROUND**

Plaintiffs' allegations, presumed true for purposes of this analysis, establish the following: W.S. was a special education student at a school in the Dalton Riverdale School District 148, a school district in Cook County, Illinois. (Verified Two Count Compl. for Breach of Mediation Agreement and Appeal (hereinafter Pls.' Compl.) ¶¶ 2–5, Ex. A to Mem. of Law in Supp. of Def.'s Rule 12(b)(6) Mot. to Dismiss Pls.' Compl. [11].) W.S. was in a special education program at one of Defendant's schools because of a diagnosis of an emotional disability with a secondary classification of a learning disability. (Psychological Report at 1, Ex. C to Mem. of Law in Supp. of Def.'s Mot. to Dismiss.) In particular, W.S. was said to have problems with "over activity, impulsiveness, and distractibility and in social interactions with peers"; for example, when interacting with children of W.S.'s own age, peers found W.S. "to be offensive or atypical." (*Id.* at 2–3.) Plaintiffs, however, were skeptical that their child's classification as having an emotional disability was accurate. (*Id.* at 3.)

To dispute this classification, in September 2016, Plaintiffs filed a due process complaint with the ISBE pursuant to 20 U.S.C. § 1415, which was enacted as part of the Individuals with Disabilities Education Act (hereinafter "IDEA" or "the Act"). (Pl.'s Compl. ¶ 10.) IDEA requires local education authorities, including Defendant, to provide a free appropriate public education ("FAPE") to eligible children with disabilities specified in the Act. *See* 20 U.S.C. § 1401(3) (listing covered disabilities). To ensure a child gets a FAPE, parents and school officials are expected to work together to craft an individualized education program ("IEP") for the student. *See Fry v. Napoleon Cmty. Schs.*, 137 S. Ct. 743, 749 (2017); 20 U.S.C. § 1414(d). Should disputes arise in this process, IDEA sets forth a set of administrative procedures for resolving such conflicts. *See* 20 U.S.C. § 1415. One such procedure is the due process hearing, conducted by a state educational agency like the ISBE after a parent files a complaint. *Id.* § 1415(f). Parties may also engage in mediation to resolve a complaint before a formal hearing. *Id.* § 1415(e). That is what

happened with respect to Plaintiffs' September 2016 complaint; Plaintiffs allege that they entered into two agreements with the District. First, Plaintiffs allege that in November 2016, Defendant agreed in writing to permit W.S. to be reevaluated through an independent educational evaluation ("IEE") to be conducted by Rush University Medical Center. (Pls.' Compl. ¶ 25.) That IEE, Plaintiffs allege, concluded that W.S.'s diagnosis should be changed to mild autism. (*Id.* ¶ 46.) Second, following W.S.'s new diagnosis, the parties entered into a mediation agreement in May 2017, and Plaintiffs withdrew their complaint. (*Id.* ¶ 10.)

The May 2017 mediation agreement provided that the parties would convene a new IEP meeting before the end of the school year, and that Defendant would change W.S.'s classification to autism. (Mediation Agreement ¶ 2, Ex. B to Mem. of Law in Supp. of Def.'s Mot. to Dismiss.) The District also agreed to provide Plaintiffs with a list of private therapeutic day schools that W.S. could attend. (*Id.* ¶ 1.) But Plaintiffs allege that Defendant breached both of these parts of the agreement. First, Plaintiffs allege that at the IEP meeting on May 22, 2017, they were presented with a psychological "reevaluation" of their child conducted by Dr. Victor Fuller, a psychologist employed by the school district. (*Id.* ¶ 24.) The District insisted that Plaintiffs sign forms allowing Dr. Fuller's report to be used and discussed at the meeting. (*Id.* ¶ 48.) Though the mediation agreement called for a change in W.S.'s classification at that IEP meeting, Plaintiffs allege that Defendant refused to make that agreed change until they signed-off on the use of Dr. Fuller's report. (*Id.* ¶¶ 26, 31–32.) Plaintiffs did not want to provide such consent because they had disagreed with previous reports from Dr. Fuller. (Pls.' Resp. in Opp'n to Def.'s Rule 12(b)(6) Mot. to Dismiss Pls.' Compl. at 4.) Moreover, Plaintiffs allege that Dr. Fuller's report was intended to replace the IEE conducted by Rush University. (Pls.' Compl. ¶ 48.) However, like the IHO (Order Granting Dist.'s Mot. to Dismiss Parents' Due Process Compl. at 5, Ex. D to Mem. of Law in Supp. of Def.'s Mot. to Dismiss), the court reads the report as being based only on the IEE's results. Indeed, the report concluded that the IEE was "appropriate" and provided "an accurate description

of [W.S.'s] academic and behavioral functioning." (Psychological Report at 1, 3.) It was not until August 9, 2017—three months after the school year had ended—that W.S.'s classification was changed, and that change occurred, according to Plaintiffs, only after they got lawyers involved, resulting in unnecessary delay and expense. (Pls.' Compl. ¶¶ 31–32.) With respect to the list of schools the District was expected to provide, Plaintiffs contend the schools listed were inappropriate for a child with a mild autism diagnosis like W.S. (*Id.* ¶ 18.) Instead, the list included "schools for minors who had been expelled or suffered severe psychiatric disorders." (*Id.*) Consequently, Plaintiffs had to pay for additional legal assistance to find an appropriate placement for their child. (*Id.* ¶ 19.)

Plaintiffs also take issue with how that May 22, 2017 IEP meeting was conducted. They assert that District employees would not confirm that the Rush University IEE had been included in W.S.'s educational records and refused to permit Plaintiffs to provide statements disputing certain information in their child's records. (*Id.* ¶ 39.) Plaintiffs claim that District employees instructed a notetaker at the meeting to disregard their statements so they would not appear on the record. (*Id.* ¶ 40.) They state, further, that District employees interrupted them at the meeting, interfering with their ability to advocate for their child. (*Id.* ¶ 42.) Ultimately, because Plaintiffs refused to sign-off on Dr. Fuller's report, the District ended the meeting without changing W.S.'s classification or otherwise making progress toward a new IEP. (*Id.* ¶ 42.)

It was these alleged shortcomings in the process that led Plaintiffs to file a new due process complaint on May 17, 2018, with the ISBE. (*Id.* ¶ 13.) According to the IHO, Plaintiffs identified eight separate issues in their due process complaint:

> The parent's May 17th complaint alleges that the district: 1) violated a November 2016 agreement between the parties that the district would provide an independent educational evaluation (IEE) at public expense by allowing the district psychologist to "enter the matter" after the IEE had been completed; 2) conducted its own evaluation of the student after the IEE without the parents' consent; 3) evaluated the student more than once in the prior school year without parental agreement; 4) breached the mediation agreement by not changing the student's eligibility

classification from emotional disturbance to autism as agreed to during the May 22, 2017 IEP meeting; 5) did not respond to the parents' question "whether or not compensatory education is still provided to students who are forbidden to attend class due to disciplinary action"; 6) interrupted the parents during the May 22nd IEP meeting and thereby interfered with the parents' ability to advocate for the student; 7) failed to provide an appropriate list of possible therapeutic schools for the student's placement for the 2017–2018 school year; and, 8) changed the student's IDEA eligibility in August 2017, not on May 26, 2017 as the district asserts.

(Order Granting District's Mot. to Dismiss Parents' Due Process Compl. at 1–2.) The IHO granted Defendant's motion to dismiss this complaint, however, concluding that the complaint did not adequately allege breach of the November 2016 agreement; that Dr. Fuller's report was not a new evaluation that required parental consent under IDEA, *see* 20 U.S.C. § 1414(c)(3), but was merely a review of the Rush University IEE;[1] that the IHO had no authority to enforce the mediation agreement or to order the district to respond to the parents' question in allegation 5; and that the parents had not alleged denial of a FAPE, which is required for the IHO to provide relief under IDEA. (*Id.* at 5–8.)

Plaintiffs filed a two-count complaint in the Circuit Court of Cook County on January 18, 2019. Count I states a breach of contract claim for Defendant's alleged violation of certain terms of the May 2017 mediation agreement, while Count II appeals the IHO's dismissal of their due process complaint. (Pls.' Compl. ¶ 1.) Defendant removed the case to this court and has moved to dismiss both counts.

## DISCUSSION

**Subject Matter Jurisdiction**

Plaintiffs initially filed this suit in the Circuit Court of Cook County, but Defendant removed the case to federal court, invoking federal question jurisdiction pursuant to 28 U.S.C. § 1331. The court expressed concern about this issue early on, but is now satisfied that it has jurisdiction.

---

[1] Such a procedural violation of the Act could be considered denial of a FAPE if it "significantly impeded the parents' opportunity to participate in the decisionmaking process regarding the provision of a free appropriate public education to the parents' child." 20 U.S.C. § 1415(f)(3)(E)(ii)(II).

A defendant is permitted to remove an action from state court to federal court if the suit could have been initiated in federal court. 28 U.S.C. § 1441(a). As the removing defendant, the School District has the burden of establishing that federal jurisdiction is proper. *Dancel v. Groupon, Inc.*, __ F.3d __, 2019 WL 5057669, at *2 (7th Cir. Oct. 9, 2019). A federal court has jurisdiction under § 1331 only if "a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Empire HealthChoice Assur., Inc. v. McVeigh*, 547 U.S. 677, 690 (2006) (quoting *Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Tr. for S. Cal.*, 463 U.S. 1, 27–28 (1983)). As noted above, Plaintiffs have brought two claims: Count I alleges that Defendant breached its mediation agreement with Plaintiffs, and Plaintiffs in Count II appeal the IHO's dismissal of their due process complaint. This second count is dispositive of the jurisdictional concern.

IDEA provides that "any party aggrieved by the findings and decisions made" by a state educational agency "shall have the right to bring a civil action . . . in any State court of competent jurisdiction *or in a district court of the United States, without regard to the amount in controversy*." 20 U.S.C. § 1415(i)(2)(A) (emphasis added). Count II of Plaintiffs' complaint, originally filed in Illinois state court, alleges that the IHO's dismissal of their due process complaint was erroneous. Plaintiffs also seek an award of attorney's fees as authorized by IDEA. 20 U.S.C. § 1415(i)(3)(B). For these reasons, Defendant contends that the well-pleaded complaint requirement is satisfied and that federal-question jurisdiction over this claim is therefore proper. The court agrees. Plaintiffs do not address this argument directly or discuss explicitly why jurisdiction over Count II is improper. Instead, Plaintiffs cite *Gunn v. Minton*, 568 U.S. 251, 258–65 (2013), and *RX.com, Inc. v. O'Quinn*, 766 F. Supp. 2d 790, 795–97 (S.D. Tex. 2011), two cases in which courts denied federal-question jurisdiction under the rationale of *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308 (2005). But in *Grable*, the Court addressed the question of when a

state-law cause of action may give rise to § 1331 jurisdiction. *See id.* at 314 ("[T]he question is, does a state-law claim necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities."). IDEA explicitly grants a federal court jurisdiction over the appeal of an IHO's decision. *See* 20 U.S.C. § 1415(i)(2)(A); *see also Fry*, 137 S. Ct. at 749 ("[A] parent unhappy with the outcome of the administrative process may seek judicial review by filing a civil action in state *or federal court.*") (emphasis added). The court has federal-question jurisdiction over that claim.

Count I, on the other hand, does not on its own support federal jurisdiction. In that count, Plaintiffs allege that Defendant breached their mediation agreement and seek money damages. The mediation agreement was made pursuant to the mediation procedures provided in IDEA, 20 U.S.C. § 1415(e), and IDEA provides that such an agreement "is *enforceable* in any State court of competent jurisdiction or in a district court of the United States." 20 U.S.C. § 1415(e)(2)(F)(iii) (emphasis added). Several courts have held, however, that a suit to enforce a mediation agreement is different from one alleging a breach and requesting money damages. *See Miksis v. Evanston Twp. High Sch. Dist. # 202*, 235 F. Supp. 3d 960, 979 (N.D. Ill. 2017) ("These statutory provisions, however, provide for jurisdiction to *enforce* settlement agreements, and Plaintiffs do not seek enforcement; they seek damages for the breach of the Settlement Agreement."); *Lara v. Lynwood Unified Sch. Dist.*, No. CV 08-04616, 2009 WL 2366454, at *3 n.4 (C.D. Cal. July 29, 2009) ("IDEA's jurisdictional grant applies to 'enforcement' not 'breach' of settlement agreements."). A claim for breach of the mediation agreement is, as Plaintiffs contend, a contract action brought under state law. *See Jones v. Ass'n of Flight Attendants-CWA*, 778 F.3d 571, 573 (7th Cir. 2015) ("A disagreement about whether parties to a settlement have honored their commitments is a contract dispute."). Defendant is correct that *Charlie F. v. Bd. of Educ. of Skokie Sch. Dist. 68*, 98 F.3d 989, 992–93 (7th Cir. 1996), held that a claim for money damages might

nevertheless trigger jurisdiction if the plaintiff's grievance is one that could be remedied by services available under the Act. In this case, however, Plaintiffs are asking for damages for alleged losses resulting from Defendant's failure to provide them with an appropriate list of therapeutic schools and its failure to change the child's eligibility classification by the agreed date. Prospective relief appears inadequate to satisfy these grievances. The court concludes Count I is properly before it only pursuant to the doctrine of supplemental jurisdiction. See 28 U.S.C. § 1367(a).

**Defendant's Motion to Dismiss**

Defendant has moved to dismiss Plaintiffs' claims under Rule 12(b)(6), arguing that the complaint is insufficient because it fails to state a claim upon which relief may be granted. FED. R. CIV. P. 12(b)(6). In considering a Rule 12(b)(6) motion to dismiss, the court presumes the truth of all well-pleaded factual allegations in the complaint and draws all reasonable inferences in Plaintiff's favor. *Simpson v. Brown Cty.*, 860 F.3d 1001, 1005 (7th Cir. 2017). The court may also consider documents attached to the motion to dismiss if those documents are referred to in the complaint and important to the plaintiff's claim. *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993). To survive this motion, the complaint must not only provide the defendant with fair notice of a claim's basis but must also be facially plausible—that is, it must allow the court to draw a reasonable inference that the defendant is liable. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Because the court's jurisdiction over Count I depends on Count II, the court will begin its analysis with the claims in the latter.

In Count II, Plaintiffs ask that the court reverse the IHO's dismissal of their due process complaint. Specifically, Plaintiffs take issue with the IHO's findings that (i) the IEE prepared by Rush University Medical Center is actually included in W.S.'s educational record, (ii) the IHO lacked authority to order the District to permit Plaintiffs to add a statement objecting to certain

information in W.S.'s record, (iii) the District's interruptions of Plaintiffs during IEP meeting did not constitute denial of a FAPE, (iv) Dr. Fuller's psychological report was not a new evaluation conducted without parental consent, and (v) the delay in reclassifying W.S.'s placement and eligibility also was not denial of a FAPE. In support of its motion, Defendant argues that a court reviewing an IHO's decision can grant relief only if there is a finding that a FAPE was denied and that Plaintiffs have not pleaded denial of a FAPE. *See Fry*, 137 S. Ct. at 754 ("In the IDEA's administrative process, a FAPE denial is the *sine qua non*."); *id.* at 754 n.7 ("[A] court in IDEA litigation may provide a substantive remedy only when it determines that a school has denied a FAPE."). The court agrees.

The Supreme Court has interpreted the FAPE requirement as meaning that "a school must offer an IEP reasonably calculated to enable a child to make progress appropriate in light of the child's circumstances." *Endrew F. v. Douglas Cty. Sch. Dist. RE-1*, 137 S. Ct. 988, 999 (2017). IDEA created numerous procedural safeguards—including the IHO hearing—to ensure that a FAPE is provided. *See* 20 U.S.C. § 1415(a) (requiring state or local educational agencies to "establish and maintain procedures . . . to ensure that children with disabilities and their parents are guaranteed procedural safeguards with respect to the provision of a [FAPE]"). An IHO must order relief if he finds that a child with a disability is not being provided with a FAPE. *Fry*, 137 S. Ct. at 754. Importantly, however, if there is some accommodation that is not needed to fulfill the FAPE requirement, then "the hearing officer cannot provide the requested relief. His role under the IDEA is to enforce the child's 'substantive right' to a FAPE. And that is all." *Id.* (citation omitted).

Plaintiffs have not pleaded how W.S. was denied a FAPE by Defendant. Nothing in the complaint suggests that the District's educational program would not allow W.S. to make progress appropriate to the child's circumstances. While Plaintiffs' allegations that they were interrupted and felt unable to participate in the IEP meeting are troubling and could run afoul of IDEA's

9

regulations, 34 C.F.R. § 300.501(b)(1) ("The parents of a child with a disability must be afforded an opportunity to participate in meetings."), the IHO found that Plaintiffs remained able to advocate for their child. (Order Granting District's Mot. to Dismiss Parents' Due Process Compl. at 7.) "The court must give 'due weight' to the determinations made during the state administrative process." *Bd. of Educ. of Tp. High Sch. Dist. No. 211 v. Ross*, 486 F.3d 267, 270 (citing *Bd. of Educ. of the Hendrick Hudson Cent. Sch. Dist. v. Rowley*, 458 U.S. 176, 206 (1982)). But Plaintiffs have not suggested that they could present the additional evidence that would be needed to overcome the deference that the court must give this IHO finding. *See Rowley*, 458 U.S. at 206 (noting that district court review under IDEA "is by no means an invitation to the courts to substitute their own notions of sound educational policy for those of the school authorities which they review"). Moreover, the Seventh Circuit has previously rejected arguments that infringing on a parent's right to participate meaningfully in an IEP meeting necessarily constitutes denial of a FAPE. *Evanston Cmty. Consol. Sch. Dist. No. 65 v. Michael M.*, 356 F.3d 798, 804 (7th Cir. 2004) (rejecting the plaintiff's argument that a FAPE is denied whenever parents' right to participate is "seriously infringed"); *see also Heather S. v. State of Wis.*, 125 F.3d 1045, 1059 (7th Cir. 1997) (noting that the question is whether procedural flaws deprived the student of a FAPE). Ultimately, Plaintiffs provide only conclusory statements about how their child was denied a FAPE. Without a FAPE denial, the court, like the IHO, will be unable to provide any relief. *See Fry*, 137 S. Ct. at 754 & n.7.

Another deficiency with Plaintiffs' claim is that W.S. is no longer a student in the District; in fact, now that W.S. is of high school age, W.S. would no longer be eligible to attend any schools in the District, which does not have a high school. *See Our Schools*, Dolton Riverdale School District 148, http://www.district148.net/schools.html (last visited Oct. 21, 2019). That means that Defendant is not in a position to provide the type of equitable relief that IDEA makes available. As in *Bd. of Educ. of Downers Grove Grade Sch. Dist. No. 58 v. Steven L.*, 89 F.3d 464, 467 (7th

Cir. 1996), in which the Seventh Circuit held that parents' complaint about their child's fifth-grade IEP was mooted because he was about to enroll in high school in a different district, Plaintiffs' complaint is moot even if they had pleaded that W.S. was denied a FAPE by Defendant.

For the foregoing reasons, Count II is dismissed. Because the court had jurisdiction over Plaintiffs' state-law claims in Count I under its supplemental jurisdiction, *see* 28 U.S.C. § 1367(a), the court will also remand Count I back to the Circuit Court of Cook County. *See id.* § 1367(c) ("The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (3) if . . . the district court has dismissed all claims over which it has original jurisdiction."); *Hagan v. Quinn*, 867 F.3d 816, 830 (7th Cir. 2017) (quoting *Groce v. Eli Lilly & Co.*, 193 F.3d 486, 501 (7th Cir. 1999) ("The usual practice in this circuit is for district courts to 'dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed prior to trial"); *Al's Serv. Ctr. v. BP Prods. N. Am., Inc.*, 599 F.3d 720, 727 (7th Cir. 2010) ("When all federal claims in a suit in federal court are dismissed before trial, the presumption is that the court will relinquish federal jurisdiction over any supplemental state-law claims.").

## CONCLUSION

Defendant's motion to dismiss [10] is granted with respect to Plaintiffs' claims in Count II. The state-law claims in Count I are remanded to the Circuit Court of Cook County. Civil case terminated.

Date: November 4, 2019

_____
Rebecca R. Pallmeyer
United States District Judge